The first case for argument this morning is 14-1321, Enzo Biochem v. Applera. Mr. Phillips. Good morning, Your Honors, and may it please the Court. The fundamental question in this case that I'm going to address today involves claim construction. What we're dealing with here is a patent on a modified nucleotide that can be detected as part of a DNA probe. And the fundamental question then is, is it limited to indirect detection or is it, in fact, extended to direct detection? Just on the claim construction point, so leaving aside for a moment the dependent claims, but the district court seems to have focused principally on the claim language, which I think it acknowledged is somewhat ambiguous, but suggesting that based on the A may be a part of or comprises, he says it could be limited, A may be part of or the entire signaling moiety. Why is that wrong? Because the specific language that it does violence to in the claim is in two ways. First, A comprises at least one component of a signaling moiety capable of producing a detectable signal. So that by itself suggests one of more, not just one, that language. But even more, to me at least, more critical is B and A are linked, this is in column 31, B and A are linked in a way that does not substantially interfere with the formation of the signaling moiety, which clearly envisions that the moiety is going to be formed at some point later rather than that A has taken on the capacity to be the moiety in the first instance. Mr. Phillips, I know your position is that you think the language at least three, I'm sorry, at least one component could mean the entirety. I don't think it could mean the entirety. My position is that one component means it's one component and you have to have a second component and that's why this is all about indirect detection and that that is reinforced by the subsequent language that talks about the formation of the moiety rather than the moiety in fact exists. So I would argue that the plain language of the claims themselves envision indirect detection and then I would go to the specification. So you're reading, I'm sorry I misspoke, you're reading it as if it could encompass just a component and not the entire. Right, that it must encompass just a component. But then don't you, aren't you reading out the words at least? No, no, because there are... What does at least mean if there could be more than one component? Well, because there can be other components involved in this that don't involve detection. So you can have other components of this particular portion of the nucleotide, but they don't involve detection and in fact there are examples in the patent that show that or at least there's some testimony that specifically shows that there are various components of it. But what we're saying is that if it's the moiety that is detectable, that has to be formed and that can only be formed by having one other, something else added to it and that that's reinforced. Not only is that... And that's consistent with the specification. That is absolutely consistent with the specification. The strongest statement of it is they identify the essential criteria, right, that they need and what's one of the essential criteria? A must react specifically with chemical or biological reagents to provide a sensitive detection system, which by its nature envisions that there's multiple components to it. Mr. Phillips, well, what you say makes sense in terms of the description, but isn't there an enablement problem as well if the claim is given this breadth? Oh yeah, absolutely there's an enablement problem because there is nothing in this patent that remotely explains how you are supposed to do what we ultimately did accomplish many years later after much experimentation, the ability to in fact come up with a direct detection system that doesn't use radioactivity. I think the easier way for the court to resolve this case would be on a claim construction argument and just say, look, the specification, the other thing about the specification and this is on page 16 of the reply brief, we go through in detail every single use in the specification of reactions and interactions as part of the description of exactly what this patent is designed to do. So there can be no serious, at least in my mind, no serious question that if you just look at the claims in the specification, this is limited to indirect detection. The only way the district judge got around that was first, she took the testimony of an expert at the summary judgment stage that said example nine was an instance of direct detection. My colleagues on the other side have completely abandoned that argument. But she also relied on the dependent claims. I mean, in your read, you felt the dependent claims entirely and that's kind of a stark thing. Probably 70, it probably reads 70 and I think you could probably reconcile 67 and 68 with it, in part because the language is fairly close to the way the earlier language in the specification sets out the indicator molecule. But yes, there's no question. But again, we're talking about dependent claims that were added 14 years later and, you know, this court has consistently said the primary focus has to be on the independent claims. And it seems to me that the claim language itself is absolutely clear. And then the specification, you know, demonstrates everything. And if all you had were dependent claims, I don't think the district judge would have decided the issue the way she did in the first place. She was strongly moved by the fact that the expert said, no, no, you can look in the specification, look at example nine and that's an instance of direct detection. And that's, one, completely wrong and, two, a position that the other side has abandoned. The other two arguments, I've already addressed enablement. The written description argument, again, they only, in some ways, to my mind, reinforce the strength of the claim construction argument. Isaac, can we step back a minute though and doctrinally look at the choice between claim construction and written description and which way the court ought to be looking at it? Your preferences for claim construction, I may agree with you on that. But when, how do we decide which doctrine applies? I mean, under Phillips, we don't say we're going to read a claim to preserve its validity. Is it because when there's ambiguity in the claim, then you continue to look at the claim and you use the spec and the spec limits the claim? And when there's no ambiguity, it becomes more of a written description problem? Is that how we would analyze the two, the application? I mean, you could analyze it, but if you're asking me sequentially the right way to do it, I think I would say claim construction is the right way to do it because of the public notice function. I mean, how this court describes this patent not only affects the parties in front of you, but it tells the rest of the world what this patent means. So I would urge the court to look primarily at the claim construction issue in the first instance and then... You want to spend a couple minutes on the waiver argument raised by your friend on the other side? Yes. His suggestion is that we should have raised this in the last appeal. First of all, it's absolutely clear from this court's decisions that you cannot bring an infringement argument as a cross-appeal to an infallibility appeal. And remember, this was their appeal, not ours. And I don't know of any doctrine that requires a party to urge an alternative ground for because we could not have asked you to affirm. All we could have done was ask you essentially to give us an advisory opinion on the claim construction issue and then remand it back to the district court to allow that claim construction to be applied under the circumstances of the case. So I cannot envision a circumstance in which we would have done that. And also, it would have been particularly difficult, I think, for us to do that when the court had denied the interlocutory appeal on the claim construction issue already. I would have at least worried. I obviously didn't handle that appeal. But I would have been very worried about bringing that to this court and it appeared to be coming in the back door to raise an issue that the court had made clear it was going to wait until final judgment to review. So I don't think there's any basis for a waiver under these circumstances. And if there are no further questions, I'll just over-balance my thing. Good morning and may it please the court. In a prior appeal of this matter, this court found that ABI had made a prima facie case of anticipation by two prior art references in which the signaling moiety A is fluorescent and directly detectable. Was that decision correct? ABI takes no position on this question because if this court was right, then their current claim construction position is directly contrary to that finding. And if this court erred, then the very next question is who invited the error? When I say that a patent claim is anticipated, I am making an argument about its scope. I am arguing that that patent claim encompasses something that is disclosed, for example, in a prior art printed publication. When ABI told this court that these claims were anticipated by the Kazai and Pinto references, ABI was affirmatively advocating for a claim scope that allowed for A to be fluorescent. The very claim scope that they are now saying before this court is affirmatively excluded. Now, ABI may not have been able to challenge the claim construction by way across the field, but at the very least, they could have raised it as alternative grounds to support the judgment that plaintiffs take nothing on their infringement claim. This is exactly what Microsoft was allowed to do in the typewrite keyboard case that they rely upon in their reply brief. They are allowed to do, you are saying that they were obliged to do it? I am saying they are allowed to do it. The waiver comes from the fact that they not only accepted the claim construction, but affirmatively advocated for it in seeking results from this court. What they should have done in the prior appeal is raise the claim construction as alternative grounds to support the judgment. But not as a cross appeal? Not as a cross appeal, although there are some instances where the court has allowed cross appeals under similar situations. Really? At the very least. For example, in the Klontek and the Invitrogen case, Klontek's cross appeal on 112 defenses was allowed, notwithstanding that the patents had been held invalid for anticipation. But at the very least, they could have raised this argument as alternative grounds in support of the judgment and conditioned their anticipation argument on this court's going against them on the claim construction. Can we move on to the claim construction? Yes, we can do that. I am a little unclear. I understand you were arresting, as the district court did, on the question of at least one component. And if you take that phrase as your argument, that that shows that it can be one, and therefore that is the direct detection. Is that your argument? That is exactly right. And if you think about it... But aren't you... Doesn't that reading read out other language in the claim? No, it doesn't. And the language that Mr. Phillips points to concerning formation of the signaling loyalty, keep in mind what happened at trial. The jury found infringement by products in which A is fluorescent and directly detectable. In the course of making that infringement finding, the jury read all of the language in the claim, including the language about formation of signaling loyalties, onto a directly detectable A. Yeah, but the jury doesn't get to do claim construction on that. But the point is, ABI has not appealed that finding. And more importantly, this limitation formation... Wait, has not appealed what finding? They have not appealed the district court's finding of infringement under the district court's claim construction. There is no argument by ABI... So you're saying in order for them to challenge the claim construction here, they would have had to appeal the jury's infringement finding? No, that's not what I'm saying. What I'm saying is that their argument that this language, formation of the signaling loyalty, their argument that it can't read on directly detectable A, is directly contrary to the jury's finding in this case, where the accused products were directly detectable, and that they did not appeal that finding. And I think I... But what's the answer to the Chief Judge's question about your reading out language such as at least one? Well, it's... If we look at the formation of the signaling loyalty language, that's only one half of the limitation. The full limitation is that the linkage group not interfere with formation of the signaling loyalty or detection of the detectable signal. That's the full limitation. This court construes or is disjunctive. It only has to do one of these two things. And when A is directly detectable, then you don't want the linkage group to interfere with detection of the detectable signal. What about the specification? What can you point us to in the specification that supports your position of directly detectable? What I can point you to are the admissions of their expert, that specific examples of A are directly detectable through multiple techniques, including... No, I'm asking you about the specification. The specification, the only instance of actual detection that's reported in the specification, we aren't talking about whether something's detectable or not, but whether something is actually detected, is found at the end of column 14 through the beginning of column 15. And there, the detection is direct via phosphor... Via phosphor... I'm sorry. What did you say? Column 14? Column 14, line 63 through column 15, line 12. That is the only instance of actual detection that is reported in the specification, and it is done directly through a P32 radio label. Well, I think direct detection is, in fact, talked about in the background of the invention in column 1, but it's criticized and distinguished from the current invention. Radio labels are criticized and distinguished. What is not criticized and distinguished is direct detection in general. And, in fact, when... Show me on column 14. I'm sorry. I'm sorry. I don't have the patent up with me. Do you want to get it? Yeah, I can get it. The reference to normal DNA NIC translated with 32PDAMP, which comes around line 67 of column 14, is quantitatively eluded upon the addition of 0.5 molar sodium fluoride, with me. And then it goes on to describe detection of these things, and it's the P32 radio label that's directly detectable. But we have, in addition to the specification, we have dependent planes that at least plane 70 would be... I'm sorry. Could you just go back and explain to me what you're pointing... Restate. Maybe I just wasn't understanding what you're pointing to at the bottom of... I get where you are. At the bottom of column 14, top of 15. And that's direct detection? Yeah. This is reporting an experiment in which a P32 radio label is directly detected. All right. And we're going to talk about the... Yeah, I don't think anybody's disputing that at least one of those dependent planes covers direct detection. The question is whether that's enough to trump all of the other analytical tools we're using. And as best as I can tell, this court has never adopted a claim construction that would afford no scope whatsoever to a dependent claim. The closest case that's been cited is the data... I'm sorry, the Danakinimation case. And in that case, this court found a negative limitation specifically that you don't have repetitive DNA sequences that removed at least some scope from a dependent claim. But the text of the dependent claim is not reported in that opinion, so it's not clear that the resulting construction afforded them no scope. But more importantly, the result in that case was driven by the prosecution history. The relevant claim language to unique DNA sequences was added to address an enablement rejection. In the context of the invention, if you had repetitive sequences, it wouldn't work. And that may very well have been a case where they fixed the independent claims and then the applicant in office just neglected to look at the dependent claims, which happens all the time. The prosecution history in this case surrounding these dependent claims is directly to the contrary. They were added 10 months after independent claim 1 was presented, and they evidenced a clear intent by the applicants to secure claim scope that allowed for A to be directly detectable. Now, if the examiner had any doubt whatsoever that claim 1 did not cover direct detection, what would he have done when claims 67, 68, and 70 were presented to him? But you're not saying that a dependent claim is not subject to the same requirements of description and enablement as every other claim? No, I'm certainly not saying that. But one thing that's important to recognize about the written description argument in this case, they had not presented any written description challenge to the way A is defined in claims 67, 68, and 70. Their challenge is solely as to the way that A is defined in claim 1. Well, when we were talking about what's in the spec, you pointed us to claim 14, to column 14, the language at the bottom of 14. So is that your sole support? Oh, no. No. No, absolutely not. When you get to, I believe it is column 8, there are specific examples of A that are listed, including biotin and inobiotin. On cross-examination, their expert admitted, and this is found, and the relevant sites are mustered at page 14 of our brief, admitted that those can be directly detected by NMR spectroscopy or with infrared spectroscopy. They are directly detectable by those techniques, notwithstanding that actual detection via those techniques is not specifically set forth in the patent. This actually raises another problem with their claim construction, and that is that it fails to give any meaningful understanding of the scope of the claims. There's some questions it doesn't answer. If you have A that is directly and indirectly detectable, as the evidence shows biotin and inobiotin are, are you inside or outside of the claims? If A is thought to be directly detectable and someone comes along later with a way of complexing it with something else, does it shift from non-infringing to infringing at that point? Conversely, if it's thought to be indirectly detectable and someone later comes up with a way of directly detecting it, does it transition from non-infringing to infringing at that point? We put those questions to ABI at page 58 of our brief, and ABI did not mention them in their reply, and I think there's a good reason why they ducked those questions. Because if their answer is, well, it depends on what technique you actually use to detect A, then all of a sudden we are reading a method step into a composition of matter claim, and that, from what I can tell, is completely unprecedented. And we're doing it in a way that's directly contrary to the only instance of actual direct detection that's reported. I think you're overstating the law a little bit. Okay. The method doesn't have to be in the composition claim. Okay. Turning to the written description issue, as I noted, the only issue here is with respect to Claim 1. As construed by the district court, Claims 1 is generic. It can cover directly detectable A or indirectly detectable A. The general law of this court is that disclosure of a species supports claim to a genus, and they agree that at least with respect to indirectly detectable A, there is species support for the claim. The exception to that is when there's substantial variation between species within a genus, as stated in the Carnegie-Mellon case, which they cite in their reply brief. So what is the evidence that there's substantial variation in the context of these compositions between A that's directly detectable and A that's indirectly detectable? And keep in mind, this evidence has to be viewed from the filter of the burden of proof by clear and convincing evidence, and the fact that the jury verdict is in our favor and is reviewed for substantial evidence. This is a composition. You've got A. It's attached to a base by a linking group. In the preferred linking group, the attachment is done through a primary amine. Does that primary amine care how you're going to go about detecting A down the road? There's absolutely no evidence that it does. And the fact that A can be directly or indirectly detectable suggests that whatever variation there is between these species is immaterial. More importantly, when ADI sat down to write their patents around their infringing products, they incorporated by reference the 767's patent, I'm sorry, disclosure, of how to label nucleotides. And what they were telling the world, look to the 767 patent to do, was to attach directly detectable dye label to nucleotides. So at least their own scientists recognize that this disclosure provides a way of attaching directly detectable labels to nucleotides such that whatever variation there is between these two species, direct versus indirect, it can't possibly be substantial. The evidence in their own patents is, we believe, conclusive against their enablement defense as well. That defense has been a bit of a moving target, but by the time we get to the reply brief, it's based on how to make the claim compositions. They infringed the patent using the materials and methods in the patent, using palladium catalysts, using linkage groups that are close analogs to the two preferred linkage groups in the patent. In the Johns Hopkins case, this court found species and enablement defense advanced by using a cell probe like ABI had used the patent materials and methods. And when they got around to writing their own patents, they incorporated our disclosure by reference of how to make these very materials. Thank you. Thank you, Your Honor. Just a few points in response. First of all, I understand his argument to suggest on waiver that we probably should have put a footnote in that said we disagreed with the claim construction, but we're going to go forward with it. Well, that may be, but that cannot be a basis on which to say that we have waived our ability to have the claim construction issue ultimately resolved in our favor. Two, the suggestion that somehow the jury gets to decide claim construction is obviously there's no basis for that under these circumstances. He's now come up with a new way of trying to read claim one so that it doesn't require both substantial, no substantial interference with hybridization and the signaling moiety. That clearly is not a fair way to read that. Strikingly, when he gets to the specification, you ask specifically where in the specification does it make reference. Column 14, that reference is to the 32P, which they specifically identify in column 1 as the direct detection that they are working against. That's the radioactive nucleotide. So the suggestion that that method of direct detection somehow tells the world that that's what they're claiming in this case seems to me completely unwarranted. Column 8 has nothing to do with direct detection. The suggestion that we are not challenging the written description for claims 67, 68, and 70 is wrong. If you read page 50 of our brief, we're very clear. We say any claim that is read to include direct detection is not adequately described in the specification. To me, the most powerful argument in his response to our written description is he never once said anything in the specification. He didn't cite any language in the specification that remotely tells you how to do, what remotely tells you direct detection. It's all based on words here and words there. Even outside, even on the extrinsic evidence, where he goes to the expert who said, yes, if you had a big hunk of biotin inside of a single test tube, it would be possible to detect it. That has nothing to do with a situation where you're sending a probe out trying to find out what the composition of DNA is. In any event, it's extrinsic evidence. All of the intrinsic evidence tells you that this is limited to indirect detection. That's what the court should hold and we should reverse. What about your friend's comment that your client actually acknowledged in its own patent the adequacy of the disclosure here? We certainly made reference to the 767 patent and incorporated it as a part of the overall duty of candor and disclosure. There's nothing in our patents that says, and this is because this is direct detection. It's part of a very large laundry list of patents that we incorporate, which is not uncommon. I think this court is quite aware of that. In any event, that still doesn't, even if our scientists thought that they could get direct detection out of it, that still doesn't change what the claim language plainly and unequivocally says and what the specification even more clearly says, which is that this is limited to indirect detection. Are there no further questions, Your Honor? Thank you. Thank you. We thank both counsel and the cases submitted.